IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COPRES CARR, )<br>)<br>)<br>              Plaintiff, )<br>  v. )<br>)<br>SHERIFF JOHN ZARUBA, indivudally and in )<br>his official capacity, JAMES KRUSE, )<br>ANTHONY ROMANELLI, JAMES WILLIAMS )<br>and JACK DELLINGER in thier official capacity, )<br>and THE COUNTY OF DUPAGE )<br>)<br>              Defendants. ) | Case No. 15 C 11690<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Copres Carr filed a five-count fourth amended complaint against defendants based on racial discrimination and retaliation he allegedly suffered in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000 et seq., 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim on all counts. For the reasons described below, defendants' motion is granted in part and denied in part.

**BACKGROUND**[1]

Plaintiff's complaint alleges five counts: discrimination, harassment, and retaliation in violation of Title VII (Counts I, II, and V); discrimination in violation of 42 U.S.C. § 1983 (Count III); and retaliation in violation of 42 U.S.C. § 1981 (Count IV). At the heart of

---

[1] The following facts are taken from plaintiff's complaint and are assumed to be true for purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995).

plaintiff's complaint are actions taken by his supervisors, which plaintiff claims were adverse and racially motivated.

Plaintiff, an African-American man, began working for the Dupage County Sheriff's Office in March of 1997 and continues to do so to this day. Defendants Dellinger and Williams are Sergeants with the Dupage County Sheriff's Office that supervise plaintiff. Defendant Romanelli is a Major with the Dupage County Sheriff's Office and also supervises plaintiff. Defendant Kruse is a Chief with the Dupage County Sheriff's Office and is another of plaintiff's supervisors. Defendant Zaruba is the Sheriff of Dupage County. Plaintiff does not allege any personal involvement on Zaruba's part.

In his complaint, plaintiff alleges a number of adverse employment actions based on race. First, plaintiff alleges that Dellinger ordered plaintiff to obtain a doctor's note regarding a skin condition that prevented plaintiff from complying with the office's appearance policy that required male employees to shave. According to plaintiff, his skin condition, which "greatly affects African Americans," had already been documented in his personnel file in 2007, and obtaining an updated doctor's note cost him one day of paid leave as well as his copay. At the time, plaintiff requested documentation that he was required to obtain another doctor's note, but never received any such documentation. Plaintiff filed a complaint regarding the incident with Kruse on January 15, 2015.

Plaintiff further alleges that Dellinger has twice given plaintiff written reprimands for tardiness, first on September 11, 2014, and again on January 13, 2015. According to plaintiff, he had been tardy only five times before receiving each of these reprimands, and the office's attendance policy did not call for a written reprimand under such circumstances. Plaintiff

complained to Romanelli regarding the reprimands and documented his complaint during his January 14, 2015, performance review. Presumably related to the above incidents, plaintiff alleges that Dellinger "enforced unauthorized discipline on Plaintiff concerning Sheriff Department appearance and attendance policy."

Plaintiff additionally alleges that on July 22, 2014, Dellinger ordered plaintiff to complete reports in a way that differed from the manner in which his reporting sergeant had instructed him. When plaintiff informed Dellinger that he had been taught to compete reports a different way, Dellinger instructed plaintiff to tell his reporting sergeant that Dellinger's way was "the correct way." Plaintiff refused, informing Dellinger that doing so could subject plaintiff to discipline for insubordination. Plaintiff does not allege that Dellinger took any further action on the issue.

At some point, which plaintiff does not specify, Dellinger conducted a performance review of plaintiff.[2] Plaintiff alleges that Dellinger gave him a "low" evaluation despite having been assigned to the courthouse (presumably, where plaintiff works) for only five weeks. According to plaintiff, he did not interact with Dellinger often enough for the review to be based on plaintiff's job performance, so "Dellinger had predetermined Plaintiff's job performance, and abilities based on Assumptions and stereotypes." Plaintiff complained to Kruse while reviewing his personnel file, but Kruse allegedly "failed to investigate, address, or remedy the issue."

---

[2] Plaintiff also makes allegations regarding a September 10, 2013, performance review conducted by Dellinger, where Dellinger documented "that Plaintiff needed to request other assignments and perform collateral duties/positions that become available." It is unclear to the court if this is the same performance review that resulted in a "low" evaluation. It is clear to the court, however, that plaintiff does not allege that any adverse action resulted from the September 10, 2013, performance review, so the court will not address it.

Williams also conducted a performance review of plaintiff on July 22, 2014. Plaintiff alleges that Williams had also "predetermined Plaintiff's job performance, and abilities based on Assumptions and stereotypes, not based on Plaintiff's performance." As with Dellinger, plaintiff alleges that he did not have sufficient interactions with Williams for the performance review to be based on plaintiff's actual performance. According to plaintiff, his "evaluation decreased two points," but plaintiff does not state the result of the evaluation beyond that it was "low." Plaintiff alleges that he spoke with Williams regarding the evaluation, but does not explain what that conversation consisted of or what, if anything, resulted from the conversation. Plaintiff filed a formal complaint on July 23, 2014, stating that Williams could not accurately evaluate plaintiff's performance because plaintiff "took assignments from and was directly supervised by" someone else. Plaintiff alleges that Kruse and Romanelli ignored the complaint. According to plaintiff, he "was not permitted to test for promotion" due to the low scores he received on his performance evaluations.

Plaintiff alleges that, in sum, "Zaruba, Kruse, Romanelli, Dellinger, [and] Williams in their official capacity have intentionally discriminated against African Americans by manipulating performance evaluation scores, preventing or hindering advancement of African American Deputies within the Court Security division," all while "similarly situated Caucasian employees were treated more favorably."

In addition to discrimination, plaintiff alleges that he was retaliated against after lodging complaints regarding his alleged mistreatment. As evidence of retaliation, plaintiff alleges that lesser qualified employees were promoted to positions for which plaintiff was eligible. Additionally, on January 17, 2015, plaintiff alleges that he was ordered to remove his three

children, aged 11, 12, and 15, from the courtroom where he was working, while other employees' children were allowed to attend court as spectators. According to plaintiff, this too was retaliatory.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2015, alleging ongoing misconduct that subjected plaintiff to "different terms and conditions of employment, including, but not limited to, poor performance evaluations." In his complaint, plaintiff alleged that he was "denied the opportunity to test for promotion" based on his race and that, after complaining of his mistreatment, he was retaliated against for "engaging in protected activity, in violation of Title VII." The EEOC issued a right to sue letter on September 28, 2015.

## DISCUSSION

### I. Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Sprint Spectrum L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). The pleading must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which the claim rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the "speculative level." Id.

This standard demands that a complaint allege more than legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Keeping this standard in mind, the court construes pro se complaints liberally. See Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) ("Allegations of a pro se complaint are held 'to less stringent standards than formal pleadings drafted by lawyers.'") (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

**II.    Analysis**

Defendants argue, for a number of reasons, that plaintiff's complaint should be dismissed in its entirety for failure to state a claim. Defendants first argue that allegations of adverse employment actions that were not included in plaintiff's EEOC complaint should be dismissed because they are outside of the scope of the charges filed with the EEOC. Plaintiff attempts to cure this perceived defect by attaching to his response intake notes that appear to be related to his EEOC charge and more fully flesh out the allegations he presented to the EEOC, as well as informational pages taken from the EEOC's website. Defendants argue that the court should disregard the attachments because they were not in defendant's possession during the EEOC's investigation. The court need not resolve the issue because it finds no reason to rely on the attachments in any way. It is true that plaintiff did not include in his complaint to the EEOC each of the allegations that he has presented to this court, but those that were omitted are still within the scope of the charges filed with the EEOC because both of the complaints "describe the same circumstances and participants." Conner v. Illinois Dept. of Nat. Res., 413 F.3d 675, 680 (7th Cir. 2005). The allegations are therefore "reasonably related to or grow out of the allegations in the EEOC charge" and are properly considered by this court. Martinez v. Universal Laminating, Ltd., 2002 WL 31557621, at *3 (N.D. Ill. Nov. 18, 2002).

That said, the court finds that the only allegations raised in the complaint that are sufficient to support a Title VII claim are those that were raised in plaintiff's EEOC charge. Plaintiff's additional allegations amount to nothing more than "minor and even trivial employment actions" that do not "form the basis of a discrimination suit." Smart v. Ball University, 89 F.3d 437, 441 (7th Cir. 1996) (citing cases). Although the Seventh Circuit's definition of adverse employment action is broad, it does not encompass "everything that makes an employee unhappy" or results in a "bruised ego." Id. Plaintiff's allegations that he was required to obtain a doctor's note to avoid complying with the Sheriff Department's appearance policy, that he was written up after five instances of tardiness, that he was told to complete reports in two different ways by two different supervisors, and that his young children were not allowed to spectate unaccompanied in the courtroom where he was working fall into this category. Importantly, even an allegation of falsely low performance evaluations falls into this category absent some other negative consequence arising from the evaluations. Id. at 442. Here, however, plaintiff has sufficiently pled that he received low performance evaluations because of his race and that he has been denied the opportunity to test for promotion based on those performance evaluations, while Caucasian employees were not subjected to such treatment. Construing these facts as true and drawing all reasonable inferences in plaintiff's favor, as the court must, plaintiff has sufficiently pled a Title VII racial discrimination claim.

Although plaintiff has sufficiently pled racial discrimination in violation of Title VII, he has failed to plead retaliation. In order to establish retaliation, plaintiff must allege that: (1) he engaged in a statutorily-protected activity; (2) he suffered an adverse employment action subsequent to that activity; and (3) there was a causal link between the adverse action and the

protected activity. Raymond v. City of Chicago, 183 F. Supp. 2d 1060, 1070 (N.D. Ill. 2002). As defendants point out, plaintiff fails to satisfy the first prong. Plaintiff filed his complaint with the EEOC on March 27, 2105. He does not allege any discriminatory actions subsequent to that date. Although plaintiff alleges that he filed complaints with his supervisors regarding employment actions that he disagreed with prior to March 27, 2015, he does not allege that he complained of racial discrimination at any point prior to that. Accordingly, plaintiff has failed to plead retaliation in violation of Title VII or Section 1981[3] and Counts II and IV are dismissed.

      Plaintiff has also failed to sufficiently plead harassment or a hostile work environment. As discussed above, most of plaintiff's allegations amount to nothing more than minor or trivial employment actions that, at most, were annoying or resulted in a bruised ego. "To be actionable, harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment." Ezell v. Potter, 400 F.3d 1041, 1047 (7th Cir. 2005). Beyond conclusively stating that the actions he complains of created a hostile work environment, plaintiff has done nothing to establish that his workplace was both objectively and subjectively offensive, as the law requires. Id. Although plaintiff may be personally offended by the employment decisions made by his supervisors, the court finds that a reasonable person would not find plaintiff's workplace "hostile or abusive considering all of the circumstances." Id. Consequently, plaintiff has failed to sufficiently plead that his workplace is objectively offensive, and his harassment claim fails. Accordingly, Count V is dismissed.

---

[3] Defendants further argue that plaintiff's Section 1981 claim fails because Section 1983 provides the exclusive remedy for a state actor's violations of Section 1981, citing Campbell v. Forest Pres. Dist. of Cook County, Ill., 752 F.3d 665 (7th Cir. 2014). Because the court finds that plaintiff has failed to plead retaliation, it need not address this issue.

The only counts that remain are Count I, racial discrimination in violation of Title VII against all defendants, and Count III, racial discrimination in violation of Section 1983 against Dellinger and Williams in their individual and official capacities. Although plaintiff's complaint survives on these counts, it does not survive as to all of the named defendants. As for Count I, because "a supervisor is not a proper defendant in Title VII, the suit must proceed against the employer as an entity rather than against a natural person." Carver v. Sheriff of LaSalle Cnty., Ill., 243 F.3d 379, 381 (7th Cir. 2001). Accordingly, the Title VII claims against defendants Dellinger, Kruse, Romanelli, and Williams are dismissed. See Walker-dabner v. Dart, 2015 WL 9259882, at *3 (N.D. Ill. Dec. 18, 2015).[4]

As for Count III, plaintiff's Section 1983 discrimination claim fails against Dellinger and Williams in their official capacities. For that claim to succeed the acts complained of must be caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." Thomas v. Cook Cnty. Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2009) (citation omitted). Although "there is no clear consensus as to how frequently certain conduct must occur" to impose liability on the municipality, "it is difficult to show there was a widespread custom or practice" where a plaintiff's complaint is "limited to his experience." Price v. City of Chicago, 2017 WL 36444, at *10 (N.D. Ill. Jan. 4, 2017). Such is the case here. Although plaintiff briefly mentions another African-American woman who was

---

[4] Because Dupage County is responsible for paying any judgments entered against the Sheriff, it is properly named as a defendant for the purposes of indemnification only. See Carter v. Sheriff of Cook Cnty., 2017 WL 621772, at *1 (N.D. Ill. Feb. 15, 2017) (citing Carver, 324 F.3d at 948).

allegedly "passed up for promotion to Corporal by Caucasian males" three times, aside from this one sentence, the entire complaint is based on plaintiff's own experiences, as outlined above. Plaintiff has failed to sufficiently plead an official or unofficial policy, or that either Dellinger or Williams had final policy-making authority. Accordingly, plaintiff's claim against Dellinger and Williams in their official capacities fails.

As for plaintiff's claims against Dellinger and Williams in their individual capacities, plaintiff has met the minimal pleading standard to assert a claim for racial discrimination under Section 1983. Plaintiff alleges that Dellinger and Williams gave plaintiff artificially low performance evaluations because of his race and that he has been denied the opportunity to test for promotion based on those performance evaluations, while Caucasian employees were not subjected to such treatment.

Defendants argue that plaintiff's claims against Dellinger and Williams should be dismissed based on qualified immunity. The court disagrees. As defendants point out, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The problem with defendants' argument is that plaintiff claims precisely what Harlow forbids: that Dellinger and Williams violated his right to equal protection by giving him artificially low performance evaluations because of his race. The court rejects defendants' argument that plaintiff's right to be free of racial discrimination was not clearly established "such that every reasonable official would have understood that what he is doing violates that right." Thayer v. Chiczewski, 705 F.3d 237, 253 (7th Cir. 2012). Taking plaintiff's

10

allegations true, as the court must at the pleading stage, plaintiff has sufficiently alleged that Dellinger and Williams violated his clearly established right to be free from racial discrimination in the workplace. Accordingly, defendants' motion to dismiss Count III against Dellinger and Williams in their individual capacities is denied.

## CONCLUSION

For the foregoing reasons, Counts II, IV, and V are dismissed in their entirety. Count I is dismissed as to defendants Dellinger, Kruse, Romanelli, and Williams. Count III is dismissed as to Dellinger and Williams in their official capacities. The remaining defendants are directed to answer the remaining claims on or before April 27, 2017. The parties are directed to file a joint status report using this court's form on or before May 5, 2017. This matter is set for a report on status on May 11, 2017, at 9:00 a.m.

**ENTER:** April 5, 2017

_____
**Robert W. Gettleman
United States District Judge**