IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COPRES CARR, | ) |
| | ) |
| Plaintiff, | ) Case No. 15 C 11690 |
| | ) |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| COUNTY OF DUPAGE, JAMES MENDRICK, | ) |
| in his official capacity as Sheriff of DuPage County, | ) |
| and JOHN ZARUBA, ANTHONY ROMANELLI, | ) |
| JAMES KRUSE, JAMES WILLIAMS, and JACK | ) |
| DELLINGER, each in their individual capacity | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION & ORDER

Plaintiff Copres Carr's sixth amended complaint brings two counts against defendants DuPage County, James Mendrick in his official capacity as Sherriff of DuPage County, and John Zarbua, Anthony Romanelli, James Kruse, James Williams, and Jack Dellinger, each in their individual capacity. Plaintiff brings claims under Title VII, 42 U.S.C. § 2000e, et seq., and under 42 U.S.C. § 1983, alleging that defendants discriminated against plaintiff on account of his race when they failed to promote him, and that defendants engaged in a civil conspiracy to withhold promotions from African American deputies by giving them artificially low performance evaluation scores. Defendants have moved for summary judgment (Doc. 198), and plaintiff has moved to strike several of defendants' responses to plaintiff's statement of facts (Doc. 215). For the reasons stated below, both motions are granted.

## BACKGROUND

As a preliminary matter, plaintiff did not bother to include a statement of fact section in his response brief, electing instead to leave it to the court to sift through the parties' Local Rule

56.1 statements, and the underlying exhibits, to determine the factual background and sequence of relevant events. Defendants fair no better, including a short, single paragraph of factual material in their motion for summary judgment. The briefs submitted by the parties assume that the court is as familiar with the underlying events as the authors, jumping right into legal argument without providing sufficient background information. Courts in this district have repeatedly informed litigants that a Local Rule 56.1 statement is not a substitute for a statement of facts section contained in the supporting brief. See e.g., Flakes v. Target Corp., 2019 WL 6893005; FirstMerit Bank, N.A. v. 20000 N. Ashland, LLC, 2014 WL 60605817, at *4 (N.D. Ill. Nov. 13, 2014); Duchossois Indus., Inc. v. Crawford & Co., 2001 WL 59031, at *1 (N.D. Ill. Jan. 19, 2001) ("Counsel obviously fail to understand the purpose of L.R. 56. L.R. 56.1 statements are not intended to be substitutes for a statement of facts section of a memorandum of law. Rather, their purpose is to assist the court in identifying those material, uncontested facts in the record that entitle the movant to judgment.").

The court can discern the following facts. Plaintiff is employed as a Deputy Sheriff in DuPage County. It appears that plaintiff wanted to be promoted to sergeant, but was unable to sit for the promotional exam due to his low performance evaluation score. To be promoted to sergeant, deputies are required to go through several steps. First, a deputy must obtain a score of 70 or higher on the performance evaluation immediately preceding the promotional examination. Second, the deputy must take and pass the promotional examination. Next, deputies receive a composite score that puts the applicants on a ranked list from which the Sherriff selects individuals for promotion. Finally, if there is an open position, the Sherriff selects a candidate to promote. Although the Sherriff has discretion to choose anyone on the

list, it appears that the current Sherriff typically selected candidates in the order they appeared on the list.

Plaintiff received a score of 67 on the performance evaluation that preceded the 2014 promotional examination.[1] Because he scored below 70, plaintiff was not eligible to take the promotional examination. Plaintiff asserts that defendants are engaged in a conspiracy to artificially deflate performance evaluation scores for African American deputies. To demonstrate his point, plaintiff points to performance evaluations for several other deputies, given by the same supervisor, James Williams. Williams gave the following scores: Sharon Reed, an African American woman a score of 87; Steve Stutts, an American Indian, a score of 65; Guy Decastris, a Caucasian man a score of 90; Linda Aanonsen, a Caucasian woman, a score of 71; and John Kaldis, a Caucasian man a score of 63. Thus, two white individuals (Decastris and Aanonsen) and an African American (Reed) woman scored above 70, while plaintiff, one American Indian (Stutts), and one Caucasian man (Kaldis) scored below 70.

Plaintiff compares each individual's score against his own—indeed, most of plaintiff's briefing revolves around the scores of the other deputies. For example, plaintiff claims that he received a 7 in leadership and Decastris received a 9, despite the fact that plaintiff worked as a Field Training Officer, which could be described as a leadership position (defendants disagree it could be described as such). During Williams's deposition, plaintiff extensively questioned Williams on each score he gave the deputies. Williams provided detailed answers as to why he gave each individual certain scores, such as individuals demonstrating more initiative by arriving

---

[1] The parties stipulated that defendants are entitled to summary judgment on any claims based on the 2012 performance evaluation, because they are barred by the statute of limitations. The parties further stipulate that there is no evidence for liability against John Zaruba under § 1983, and stipulate to summary judgment in his favor.

to their shifts early, volunteering for escort duties, and helping out with criminal cases. Plaintiff points to several examples where he feels he should have received the same or higher score as another deputy.

## **DISCUSSION**

Defendants have moved for summary judgment on both counts. Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material facts exists if "there is evidence such that a reasonable jury could return a verdict in favor of the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." See CTL ex rel. Trebatoski v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." Grant v. Trustees of Ind. Univ., 870 F.3d 562, 568 (7th Cir. 2017).

I.  **Plaintiff's Motion to Strike**

Plaintiff has moved to strike several paragraphs from defendants' response to plaintiff's statement of additional material facts. Under the local rules, each side is allowed to file statements of material fact, and each side is to respond to the other side's statement of material fact. In the responses, each party should either admit or deny the asserted fact or dispute it in whole or in part; and, in the event of a dispute, the responding party must cite to evidence in the record in support of its position. A party should not cite additional facts in its response to the opposing party's statement of material facts, unless those additional facts pertain to the dispute.

4

L.R. 56.1(a)(2) and L.R. 56.1(b)(3); See Sommerfield v. City of Chi., 2013 WL 4047606 (N.D. Ill. Aug. 9, 2013) ("where [plaintiff] includes additional facts in his response that do not bear on whether a dispute exists to the fact listed by [defendant], the court ignores the additional facts….").

Here, in paragraphs 10, 12, 16, 17, 18, 19, 24, 29, and 35, defendants improperly included additional facts that are not relevant to the immediate dispute. For example, in paragraph 10, defendants state: "Defendants do not dispute the statement contained in paragraph 10. Answering further, …" and then proceed to list additional factual material. Such additional facts are improper, and the court grants plaintiff's motion to strike the portion of those paragraphs starting with "Answering further."

## II.  Defendants' Motion for Summary judgment

Defendants move for summary judgment on both counts, arguing that plaintiff did not suffer an adverse employment action and that there is no evidence of race discrimination or a conspiracy to discriminate against African American deputies. Defendants also claim that the individual defendants are subject to qualified to immunity.

In Ortiz v. Werner Enterprises, Inc., 834 F.3d 760 (7th Cir. 2016), the Seventh Circuit refined the approach required for evaluating Title VII claims.[2] Eschewing the "rat's nest of surplus tests" (including direct and indirect methods of proof), the court refocused the inquiry on "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." Ortiz, 834 F.3d at 765. Under this inquiry, "[e]vidence must be

---

[2] "[T[he same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." Radentz v. Marion Cnty., 640 F.3d 754, 757 (7th Cir. 2011).

considered as a whole" regardless of whether it is "direct" or "indirect." Id. Ultimately, a plaintiff facing a summary judgment motion must produce sufficient evidence that a rational jury could conclude that the employer took the adverse action against the plaintiff because he belongs to a protected class.

Defendants proceed under Ortiz, although plaintiff's brief references the burden-shifting framework under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell framework remains a valid—but nonexclusive—method of proving a Title VII claim. Ortiz, 834 F.3d at 766. Under McDonnell, a plaintiff must state a prima facie case of discrimination by demonstrating four elements: (1) they are a member of a protected class; (2) they were meeting their employer's legitimate performance expectations; (3) they suffered an adverse employment action; and (4) at least one similarly-situated employee, not in their protected class, was treated more favorably. McDonnell, 411 U.S. at 802. If a plaintiff establishes a prima facie case, then "the burden shifts" to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action which, if believed by a trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Alexander v. Casino Queen, Inc., 739 F.3d 972, 979 n.2 (7th Cir. 2014). At that point, the plaintiff may rebut the employer's purportedly legitimate purpose with evidence of pretext.

Defendants first argue that plaintiff did not suffer an adverse employment action when he was not promoted, because any chance of promotion was speculative, and there is no evidence that plaintiff would have met the other requirements for promotion. Plaintiff responds that the adverse employment action is the artificially low performance evaluation, not the lack of a promotion. "Adverse employment actions for purposes of federal antidiscrimination statutes

6

generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions such as hostile work environment conditions amounting to constructive discharge." Cooksey v. Bd. of Edu. of City of Chi., 17 F.Supp.3d 772, 791 (N.D. Ill. 2014). That being said, "not everything that makes an employee unhappy is an actionable adverse action." Lewis v. Wilkie, 909 F.3d 858, 870 (7th Cir. 2018).

"Negative performance reviews are only adverse employment actions if they 'result in immediate and tangible consequences such as ineligibility for job benefits like promotion, transfer, or advantageous increases in responsibilities." Cooksey, 17 F.Supp.3d at 791-92 (citing Nowak v. Int'l Truck and Engine Corp., 406 F.Supp.2d 954, 970 (N.D. Ill. 2005)). Here, plaintiff's negative performance evaluation prevented him from sitting for the promotional examination, thus making him ineligible for a promotion. Plaintiff has clearly demonstrated an adverse employment action.

However, the court grants summary judgment for defendants because there is no evidence of racial discrimination, or a conspiracy to discriminate against African American deputies through artificially low performance evaluations. Viewing the record as a whole, there is no evidence from which a reasonable jury could find that defendants took the adverse employment action because of plaintiff's race. This result follows even if the court proceeds under the McDonnell framework. Assuming plaintiff has set forth a prima facie case and the burden has shifted to defendants (a big assumption since it is not clear that plaintiff has identified similarly-situated individuals), defendants have presented non-discriminatory explanations for

7

the adverse action and for why similarly-situated deputies received different scores. Williams testified as to why he gave plaintiff certain scores as compared to other deputies, such as not showing as much initiative, not volunteering for projects, and not being as involved in criminal cases. Plaintiff has presented no reason for the court or a trier of fact to doubt Williams's explanations.

Plaintiff's main argument is that a "jury could easily find Williams' explanations for his less favorable ratings of black deputies unbelievable." This argument suffers from two flaws. First, plaintiff has identified only one black deputy with unfavorable ratings—himself. There is no evidence that Williams or the other defendants engaged in a policy or practice of artificially lowering the scores for African American deputies. Indeed, the only other African American identified by plaintiff received a high score of 87, and plaintiff has presented evidence that a Caucasian deputy received a lower score than plaintiff. There is no evidence of a conspiracy to discriminate against African American deputies.

Second, there is no evidence from which a jury could find Williams's explanations unbelievable, and there is no evidence of pretext. At most, plaintiff has demonstrated his own disagreement with the scores, his own disagreement with Williams's explanations, and his own belief that he was entitled to a higher ranking. See Hill v. Tangherlini, 724 F.3d 965, 968 (7th Cir. 2013) ("[Plaintiff's] evidence shows only that he disagreed with [defendant's] assessment of his interactions with coworkers, not that [his employer] lied about his reasons for firing him."); see also, Abrego v. Shulkin, 2017 WL 4785799 (N.D. Ill. Oct. 24, 2017) (personal beliefs about being treated differently from coworkers are insufficient to give rise to a genuine dispute over whether plaintiff was the victim of race or sex discrimination). Plaintiff has presented little

8

more than speculation, little more than a "metaphysical doubt," as to Williams's reasoning and discriminatory objectives. Flint v. City of Belvidere, 791 F.3d 764, 769 (7th Cir. 2015). Based on this record, no reasonable jury could find that defendants discriminated against plaintiff on account of his race.

Having determined that defendants are entitled to summary judgment, the court declines to address defendants' arguments regarding qualified immunity.

## CONCLUSION

For these reasons, plaintiff's motion to strike (Doc. 215) is granted, and defendants' motion for summary judgment (Doc. 198) is granted. Civil case terminated.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE:   December 19, 2021**